UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| CARLOS H. GONZALEZ, | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. |
| | § | |
| ZAPATA COUNTY, RAYMUNDO DEL BOSQUE, Jr., JOE PEÑA, ZAPATA COUNTY NEWS, and KARRAN WESTERMAN | § | |
| | § | |
| Defendants | § | |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

1.  Plaintiff Carlos H. Gonzalez brings this Complaint and Demand for Jury Trial against Defendants Zapata County, Sheriff Raymundo Del Bosque, Jr., Executive Chief Joe Peña, the Zapata County News, and its publisher, Karran Westerman. This is a Section 1983 suit based upon the Zapata County sheriff's department orchestrating the publication of false criminal accusations against Plaintiff in a front-page newspaper story.

1

## JURISDICTION AND VENUE

2. Jurisdiction of this Court is proper pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 1983 because Defendants violated Plaintiff's civil rights under federal law.

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (2) because all Defendants reside or are headquartered in this District and all the conduct at issue occurred in this District.

## PARTIES

4. Plaintiff is a natural person who resides in Roma, Texas.

5. Defendant Zapata County may be served through the County's registered agent, Nellie Treviño, at 200 E. 7th Avenue, Ste. 154, Zapata, TX 78076.

6. Defendant Sheriff Raymundo Del Bosque of Zapata, Texas, may be served through the County's registered agent, Nellie Treviño, at 200 E. 7th Avenue, Ste. 154, Zapata, TX 78076.

7. Defendant Executive Deputy Joseph Peña of Zapata, Texas, may be served through the County's registered agent, Nellie Treviño, at 200 E. 7th Avenue, Ste. 154, Zapata, TX 78076.

8. Defendant Zapata County News may be served at its principal place of business through its registered agent, Karran Westerman, at 2765 South U.S. Highway 83, Zapata, TX 78076.

9. Defendant Karran Westerman of Zapata, Texas, may be served at her principal place of business located at 2765 South U.S. Highway 83, Zapata, TX 78076.

10. At all times relevant to this Complaint, Defendants acted through agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers.

## FACTUAL ALLEGATIONS

11. Plaintiff Carlos H. Gonzalez ("Plaintiff") is a 21-year-old U.S. citizen who has lived in and around Zapata County, Texas, his entire life.

12. Plaintiff has a young son and is employed in the oil and gas services sector.

13. Plaintiff's mother lives in Zapata. His father lives just across the border in Nueva Ciudad Guerrero, Mexico.

14. Aside from a misdemeanor, Plaintiff has a clean criminal record.

15. On the evening of October 19, 2022, Plaintiff was driving by himself from Zapata to San Ygnacio, Texas on US Hwy 83 to "go cruising" with friends when he ran out of gas and pulled onto the shoulder of the road.

16. Plaintiff saw a police car parked nearby and flashed his headlights hoping for a ride or other assistance.

17. The police car pulled up and was soon joined by 4-5 other law enforcement vehicles that were a mix of Zapata County sheriff's deputies and U.S. border patrol agents.

18. Plaintiff was interrogated and consented to his vehicle being searched. After finding nothing amiss, law enforcement departed, leaving Plaintiff stuck on the side of the road. Eventually help arrived and Plaintiff departed.

19. In summary, Plaintiff was not pulled over that evening by police. He did not receive a ticket. He was not arrested. He was not charged with a crime.

20.     For the next week, Plaintiff thought nothing more about his encounter with police, since these are a frequent occurrence for motorists matching his demographic in Zapata County.

21.     *A defamatory newspaper article.* According to the Zapata County Chamber of Commerce, the Zapata County News has been in business since 1985. Its publisher, Karran Westerman, is listed by the Chamber as also being Chief Executive Officer.

22.     On October 27, 2022, Plaintiff and his family were distraught to read the following story on the front page of the Zapata County News (photo):

### Cruising Around to Find Illegals

Wednesday, October 19, 2022 at 8:47 p.m. *Zapata County Sheriff's Deputies* located at U.S. 83, North of High Rest area observed a blue Ford F-150 1991 model heading north bound after shortly heading south bound.

The vehicle was observed heading north when it came to a stop with hazard lights on. The deputies then made a consentual contact encounter with the driver identified as Carlos H. Gonzalez, 20, a known human smuggler. He stated he was test driving his truck, shortly after stating that he was heading

**Continued on Page 2**

### Cruising Around to Find Illegals

to and from San Ygnacio and Zapata to cruse. Deputies overheard him telling Carlos Campos, another known smuggler that he ran out of gas with the $20 he had given him. He stated he should know where he is by already having his location.

Border Patrol showed up taking some intel and being alerted with a short ledger spotted by the deputies in the vehicle. Later, *Border Patrol* caught five illegal aliens in the brush within the area, where the scout had placed the truck on the shoulder lane.

4

23. Not only was Plaintiff not a "known human smuggler" or a cartel "scout," but the other fellow named in the story isn't a "known smuggler" either to the best of Plaintiff's knowledge; Carlos Campos is Plaintiff's cousin.

24. Plaintiff does not dispute that he called his cousin to ask for assistance; after all, he had run out of gas.

25. The article falsely ties Plaintiff to "five illegal aliens in the brush within the area" that were apprehended "later." Plaintiff knew nothing about these people.

26. The article does not delimit the terms "area" and "later" in any way.

27. After reading the article, Plaintiff's mother visited the newspaper to report the falsity of the story and ask where it came from. The newspaper's publisher, Defendant Westerman, revealed that Sheriff Del Bosque and Executive Chief Joe Peña gave her access to a police report containing that story.

28. To date, the newspaper has not retracted the story, interviewed Plaintiff or, from all appearances, independently investigated the incident.

29. It stands to reason that the Defendant newspaper and its publisher depended upon the Zapata County sheriff's department to supply them with high interest crime stories to increase readership and advertising revenue.

30. It is also fair to surmise that, like elected officials everywhere, Sheriff Del Bosque depended on the newspaper to generate whatever press he found politically useful.

31. On the morning of November 3, 2022, Plaintiff's mother called Lieutenant Investigator David Moya at the sheriff's department to report the false story. Lieutenant

Moya advised her to speak with his superiors and, if they couldn't help, to consult an attorney.

32. At 9:39 a.m. on November 3, 2022, Lieutenant Moya texted Sheriff Del Bosque and Executive Chief Peña a photo of the article at issue and asked who planted the story. Defendant Peña texted back: "I sent to newspaper." Then, Peña texted: **"It was a BIAR"** (emphasis added).

33. In this text exchange with his superiors, Lieutenant Moya notified them that Plaintiff's mother was angry because Plaintiff "was named when he was not arrested and had nothing to do with moving illegals."

34. Lieutenant Moya next went to his immediate supervisor to report what the Sheriff and Executive Chief had done to Plaintiff.

35. Executive Chief Peña called Plaintiff's mother on November 4, 2022 and told her that the BIAR report he shared with the newspaper came "from a collection of suspicions" compiled by the sheriff's department as "intel."

36. On November 7, 2022, Lieutenant Moya was fired for speaking out on this matter.

37. *BIAR reports*. The Zapata County sheriff's department is part of the Laredo Joint Operation and Intelligence Center. As a member, it submits daily Border Incident Assessment Reports ("BIAR" reports). While there is a useful law enforcement function to reporting suspicions, hunches, and half-formed investigatory ideas, this type of professional "guess work" about who might be a criminal—and the lasting damage it can do to an innocent person's reputation and privacy—is one reason BIAR reports are highly confidential.

38. Moreover, the BIAR at issue may have included Plaintiff's driver's license and license plate numbers, his date of birth, and possibly other information that is always deemed "confidential" under state and federal law. If such information was disclosed to the newspaper and its publisher, Plaintiff will seek leave to add appropriate additional claims against the culpable parties.[1]

39. Immense and lasting damage was done to Plaintiff from the publication of his BIAR report to the newspaper and then to the general public. "Known human traffickers" suffer to find jobs, rent housing, qualify for loans, travel freely, participate in school and coaching activities, and more.

40. Plaintiff's life remains in danger on both sides of the U.S.-Mexico border as someone branded by police as a competitor to actual human traffickers operating in the area.

41. Plaintiff can no longer safely cross into Mexico to visit his family, including his father, for fear he would be abducted and harmed by these cartels. This has caused Plaintiff severe emotional distress and sadness, loss of sleep, fear, anxiety, depression, and despair. Plaintiff also lives in fear of reprisal from the sheriff's department.

## TRIAL BY JURY

42. Plaintiff is entitled to and hereby demands a trial by jury. U.S. Const. amend. VII; Fed. R. Civ. P. 38.

## CAUSES OF ACTION

---

[1] Such disclosures would violate the federal Driver's Privacy Protection Act, for example. 18 U.S.C. § 2721

## COUNT I: 42 U.S.C. § 1983

43. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

44. Plaintiff meets the requirements to bring a claim under 42 U.S.C. § 1983 against Zapata County, Sheriff Raymundo Del Bosque, and Executive Chief Joe Peña for violations of his Fourteenth Amendment Due Process rights. Plaintiff pleads both (1) a "stigma," that is, that a false and injurious statement has been made; and (2) a "plus factor," that is, that Plaintiff suffered "a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights." *San Jacinto Savings & Loan v Kacal,* 928 F2d 697, 701 (5th Cir 1991) (establishing "stigma" and "plus factor" as the two elements needed to bring defamation cases under Section 1983).

45. When Defendants planted their defamatory story, they were acting in their official capacity and under color of state law since media relations were an important part of their job duties.

46. *Stigma.* As detailed fully in Plaintiff's Count III claim for Defamation, causing the newspaper to publicize that Plaintiff was a "known human smuggler" and a cartel "scout" was defamation *per se.*

47. *Plus factor.* As detailed fully in Plaintiff's Count IV claim for Invasion of Privacy, disclosing a confidential, internal summary of Plaintiff's non-public encounter with police and confidential personal information to the media was (1) an "unlawful public disclosure" and/or "intrusion" under Texas common law, (2) a violation of Plaintiff's privacy rights

under Chapter 552 *et seq* of the Texas Gov't Code, and (3) an infringement of his 14th Amendment constitutional privacy interests.

48. In sum, Defendants' **connected acts** of misconduct injured Plaintiff in **two distinct ways**, involving **two distinct torts**:

- In order to falsely stigmatize Plaintiff as a criminal (Defamation),
- Defendants publicized his private information (Invasion of Privacy).

49. Thus, there is a connection with and reasonable relation between the stigma (defamation) and the plus factor (the privacy violation). *Marrero v City of Hialeah*, 625 F2d 499, 502, 513, 519 (5th Cir 1980).

50. In addition to other damages, Plaintiff respectfully requests that the Court award court costs and attorney's fees (including any expert witness fees) pursuant to 42 U.S.C. § 1988 (permitting such an award for claims brought under Section 1983).

## COUNT II: CONSPIRACY TO VIOLATE 42 U.S.C. § 1983

51. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

52. While all Defendants participated in a conspiracy to violate Plaintiff's rights under Section 1983, it is the Zapata County News and its publisher, Defendant Westerman, that must have conspired to be subject to the federal statute. The other Defendants fall under its ambit, conspiracy or not.

9

53. To state a conspiracy claim under Section 1983, Plaintiff must show Defendants' specific intent to violate a protected right and an agreement with state officials to commit such illegal actions.

54. The Zapata County News is a preeminent news source in the county. The sheriff's department, and elected official Sheriff Del Bosque in particular, rely on this newspaper to generate "tough on crime" publicity that is popular with constituents and voters in Zapata County. The newspaper and its publisher, in turn, rely on the law enforcement Defendants for a steady flow of crime stories for a similar reason, they are popular with readers and generate sales and advertising revenue.

55. That the newspaper and its publisher defamed Plaintiff and violated his privacy interests in knowing concert with the sheriff's department is evidenced by the absence of independent investigation and journalistic standards that occurred in this case.

56. It defies belief that a newspaper in business since 1985, and its experienced publisher, would *accidently* label Plaintiff as a "known human smuggler" without verifying his criminal record first. Additionally, the BIAR report must have been clear that Plaintiff wasn't arrested or charged with anything on the evening in question because the newspaper article conspicuously makes no mention of any arrest or charges.

57. From this, a jury could reasonably decide that there was an agreement among the Defendants, express or understood, that a more vulnerable citizen's rights would take back seat to Defendants' mutual need to have a human trafficking story in the news.

## COUNT III: DEFAMATION

58. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

59. Plaintiff is a private citizen falsely accused of serious crimes.

60. To maintain a defamation cause of action in Texas, Plaintiff must prove that Defendants: (1) published a statement; (2) that was defamatory concerning the plaintiff; (3) while acting with either actual malice, if the plaintiff was a public official or public figure, or negligence, if the plaintiff was a private individual, regarding the truth of the statement. *Carr v. Brasher,* 776 S.W.2d 567, 569 (Tex. 1989).

61. On October 19, 2022, Defendants published or caused to be published false statements in a front-page Zapata County News article. There they said that Plaintiff was a "known smuggler" and a cartel "scout." They also tied Plaintiff to the arrest of five undocumented persons allegedly found later that night in the vicinity of where Plaintiff had run out of gas.

62. These statements were false. Aside from an unrelated misdemeanor, Plaintiff has a clean criminal record and no history of smuggling or human trafficking. Plaintiff had nothing to do with the undocumented persons found that night or any night.

63. Because they accuse Plaintiff of serious felonies, Defendants' false statements were defamatory *per se*. These statements by presumption, and in fact, damaged Plaintiff's reputation, exposing him to 'public hatred, contempt, ridicule, and financial injury'.

64. Defendants made their false statements and published their false story with at least negligence as to its truth. Given the Defendants involved—a sheriff's department and a

veteran publisher from an established newspaper—and their easy access to or knowledge of Plaintiff's exculpatory criminal record, Defendants acted intentionally, maliciously, and recklessly in defaming the Plaintiff.

65. Other aggravating circumstances include publishing such a story when all Defendants knew or should have known that Plaintiff was not arrested, ticketed, or even interviewed after undocumented people were found that night or in the intervening eight days prior to the story appearing on October 27, 2022.

66. A reasonable, responsible newspaper would have inquired why the subject of a human smuggling story given to it by the police, had not actually been arrested or charged by the police, both for the events that night or at any time in the past.

67. To date, there has been no retraction issued by any Defendant or any of their employees. This is despite repeated warnings received by Defendants from Plaintiff's family and former sheriff's department lieutenant, David Moya, that their story was false.

68. Instead, the sheriff's department fired Lieutenant Moya.

## COUNT IV: INVASION OF PRIVACY

69. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

70. Defendants worked together to violate Plaintiff's privacy rights.

71. The Texas Supreme Court has observed that "[t]he right to privacy is a right distinctive in itself, and not incidental to some other recognized right for breach of which an action for damages will lie." *Billings v. Atkinson*, 489 S.W.2d 858, 860 (Tex. 1973). In

Plaintiff's case, there was a statutory, common law, and constitutional abrogation of his privacy rights and interests.

72. Plaintiff is an oil field worker who has never been a public figure.

73. His interaction with law enforcement on the evening of October 19, 2022, was not known to anyone outside of the parties involved until the newspaper article came out on October 27.

74. Plaintiff was not pulled over by police that evening, much less arrested, charged, indicted, or convicted. No official or public government record existed about Plaintiff's encounter with police when the article appeared, or even now.

75. Plaintiff has not been interviewed by police about the individuals they supposedly apprehended later that night. He has not been deposed, called as a witness, or at all involved in any criminal or deportation proceedings related to them or anyone else.

76. The only known government record in existence concerning Plaintiff, the BIAR report, was an internal working document designed to allow border area law enforcement officers to share suspicions, rumors, and concerns privately and confidentially. Plaintiff had an overriding privacy interest in keeping the facts—and the rank conjecture of criminality—in that report out of the public domain.

77. Plaintiff, thus, stood at the apex of people our nation's privacy laws were designed to protect: an anonymous private citizen involved in a matter not only of no legitimate interest to the general public, but also a matter completely unknown to the general public.

78. Yet, Defendants decided to publicize the contents of this confidential BIAR report to the general public along with false accusations that Plaintiff was a known human trafficker and cartel scout.

79. Plaintiff had three sources of privacy interest and protection that were each violated by Defendants: Texas statute, Texas common law, and the U.S. Constitution.

### A. Statutory Privacy Interest: *Texas Public Information Act*

80. The Texas Public Information Act gives the general public rights of access to governmental records on every level. *See* Tex. Gov't Code Ch. 522. The Act contains exceptions where confidential information and individual privacy rights are concerned.

81. Publication of the BIAR report violated privacy interest recognized in 552.108 (a)(2) and (b)(2) of the Act:

> **(a) Information held by** a law enforcement agency … that deals with the detection, investigation, or prosecution of crime is excepted from [disclosure to the public] if: … (2) it is information that deals with the detection, investigation, or prosecution of crime only in relation to an investigation **that did <u>not</u> result in conviction or deferred adjudication.**
>
> [And]
>
> **(b) An internal record or notation of** a law enforcement agency or prosecutor that is maintained for internal use in matters relating to law enforcement or prosecution is excepted from [disclosure to the public] if: … (2) the internal record or notation relates to law

enforcement only in relation to an investigation **that did <u>not</u> result in conviction or deferred adjudication.**

(Emphasis added)

82. The BIAR report on Plaintiff likely contained confidential identifying information about Plaintiff such as his name, address, driver's license number, and license plate, all of which may have been disclosed to the newspaper and its publisher in further violation of his privacy rights. Plaintiff's privacy interest is so strong here that the Public Information Act contains criminal penalties for the release of such information: "A person commits an offense if the person distributes information considered confidential under the terms of this chapter" and the actions will constitute official misconduct. *See* Section 552.352.[2]

83. Plaintiff's privacy rights and interest created under Texas statutory law were violated in this case.

### B. Common Law Privacy Interest: *Unlawful Publicity and Intrusion*

84. The two categories of Texas common law invasion of privacy claim most at issue here are "unlawful publicity" and "intrusion."

85. *Unlawful Publicity.* Unlawful publicity is the public disclosure of private facts or facts for which the public has no legitimate concern.

86. The elements of this claim are: (1) Defendant publicizes matters concerning a plaintiff's personal life; (2) the matters publicized would be highly offensive to a

---

[2] Should Plaintiff have a federal DPPA claim, then there is a federal statutory privacy right at play here as well. *See* footnote 1, infra.

reasonable person of ordinary sensibilities; and (3) the matter publicized is not of legitimate public concern. *Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 474 (Tex. 1994).

87. Here, Defendants publicized an account of Plaintiff's personal life contained in a highly speculative—and, it turns out, completely false—internal police document. The matter publicized, that Plaintiff was smuggling humans into Texas and acting as a cartel scout would be highly offensive to anyone. Finally, not only was Plaintiff's visit with police on October 19, 2022, not a matter of public concern, but neither was rank speculation by police that he might be connected with undocumented persons allegedly found "later" in the "area," whatever those terms mean.

88. *Intrusion.* The elements of invasion of privacy by intrusion are: (1) intentionally intruding (2) upon the solitude of another or his private affairs (3) which is highly offensive to a reasonable person. *Gill v. Snow,* 644 S.W.2d 222, 223-24 (Tex.App.--Fort Worth 1982, no writ). Additionally, courts have required that the intrusion be unreasonable, unjustified, or unwarranted. *Billings v. Atkinson,* 489 S.W.2d 858, 860 (Tex. 1973).

89. Plaintiff meets these elements for the same reasons enumerated above, while acknowledging that the two varieties of invasion of privacy differ slightly.

### C. Constitutional Privacy Interest: *Zones of Privacy*

90. While there is no "right of privacy" found in any specific guarantee of the Constitution, the Supreme Court has recognized that "zones of privacy" are created by more specific constitutional guarantees within the penumbra of the First, Fourth, Fifth, Ninth, and Fourteenth Amendments.

91. In conjunction with his Texas statutory and common law privacy rights, Plaintiff had a substantive privacy interest created by the Fourteenth Amendment. This is especially true in the complete absence of any record of an official act such as arrest.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays that judgment be entered against Defendant for:

- Actual damages;
- Statutory damages;
- Punitive damages;
- Costs and reasonable attorney's fees;
- Any pre-judgment and post-judgment interest as may be allowed under the law; and
- for such other and further relief as the Court may deem just and appropriate.

Dated this 21st day of December 2022.

Respectfully submitted,

By: s/Kevin D. Green_____
Kevin D. Green
*Attorney-in-Charge*
Texas Bar No.: 00792544
S.D. Tex. I.D. No.: 3737219
Law Office of Kevin Green
7960 Mesa Trails Cir
Austin, TX 78731
Telephone: (512) 695-3613
kevin@consumerjusticecenter.com

Thomas J. Lyons, Jr., Esq. Attorney I.D. #249646
CONSUMER JUSTICE CENTER, P.A.
367 Commerce Court
Vadnais Heights, MN 55127
Telephone: (651) 770-9707
Facsimile: (651) 704-0907
tommy@consumerjusticecenter.com

*(Pro Hac Vice to be filed)*

## ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

On December 21st, 2022, I filed the foregoing document with the clerk of the court for the U.S. District Court, Southern District of Texas. I hereby certify that I have served the document on all counsel or parties of record in a manner authorized by Federal Rules of Civil Procedure 5(b)(2).

<u>s/Kevin D. Green</u>